UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES,
    Plaintiff,

vs.

GAETANO LOMBARDO,
    Defendant.
_____/

CASE NO.: 96-8090-CR-GONZALEZ
MAGISTRATE: SNOW

## DEFENDANT GAETANO LOMBARDO'S MOTION FOR SPECIFIC PERFORMANCE OF HIS ORAL SUBSTANTIAL ASSISTANCE AGREEMENT WITH THE GOVERNMENT, REQUEST FOR AN EVIDENTIARY HEARING, LOCAL RULE 88.9 CERTIFICATE AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Defendant, GAETANO LOMBARDO, by and through his undersigned counsel, moves this Court for entry of an Order requiring specific performance of his oral substantial assistance agreement with the Government, and Setting an Evidentiary Hearing and, in support thereof, states as follows:

1. Almost immediately following the verdict of guilty by the jury in this case in December, 1997, and prior to leaving the courtroom that day, AUSA Diane Fernandez informed Defendant's undersigned counsel that the government remained interested in Gaetano Lombardo's cooperation. Undersigned counsel informed AUSA Fernandez that he would discuss that subject with Gaetano Lombardo and get back to her after the first of the year.

2. In January, 1998, after discussing the subject of cooperation with Gaetano Lombardo and learning that he was, indeed, interested in cooperating with

the government to obtain a reduced sentence, undersigned counsel telephoned AUSA Fernandez and informed her of that fact.

3.  At that point, co-defendant, Franco Lombardo, who earlier had been mistried due to AUSA Fernandez' failure to timely comply with her discovery obligations, resulting in prejudice to his defense, was scheduled for retrial in the near future.

4.  As a result, during undersigned counsel's telephone conference with AUSA Fernandez in January, 1998, we discussed Gaetano Lombardo's cooperation against Franco Lombardo and also against the source of the Canadian money shipped to South Florida to purchase the cocaine involved in this case, Salvatore Gervasi.

5.  During that discussion, AUSA Fernandez promised undersigned counsel that the government <u>would file</u> a § 5K1.1 Motion seeking a reduction in Gaetano Lombardo's sentence if he convinced Franco Lombardo to plead guilty, thereby avoiding a retrial. AUSA Fernandez added that such a Motion would certainly produce a sentence of something less than the ten year mandatory minimum. On the other hand, AUSA Fernandez stated that the government's sentencing recommendation would be substantially better for Gaetano Lombardo if he also agreed to cooperate against Salvatore Gervasi, in addition to convincing Franco Lombardo to plead guilty.

6.  Following that telephone conversation, undersigned counsel and James Eisenberg, Esquire,, counsel for Franco Lombardo, visited Gaetano and Franco Lombardo at the Federal Detention Center on January 28, 1998. During that joint

conference, undersigned counsel informed Mr. Eisenberg and the two Lombardos of the foregoing oral agreement between undersigned counsel and AUSA Fernandez concerning a substantial reduction of Gaetano Lombardo's sentence if Franco Lombardo plead guilty.

7. At that time, Franco Lombardo agreed to plead guilty in this case so that his cousin, Gaetano Lombardo, could obtain a sentence reduction.

8. As this Court is well aware, thereafter, Franco Lombardo did, in fact, plead guilty in this case.

9. For this Court's information, AUSA Fernandez previously had offered, both before trial and during trial prior to the mistrial, to permit Franco Lombardo to plead guilty to a one count Information charging a "telephone" offense. Franco Lombardo rejected those plea offers. Given that prior plea offer, it was always a part of undersigned counsel's negotiations with AUSA Fernandez concerning Gaetano Lombardo that Franco Lombardo would be permitted to plead to the "telephone" offense in the event that Gaetano Lombardo convinced him to do so.

10. Accordingly, based upon AUSA Fernandez' oral substantial assistance agreement, Gaetano Lombardo did convince Franco Lombardo to plead guilty, and thereafter submitted to a debriefing with AUSA Fernandez and the case agent.

11. Gaetano Lombardo also has submitted an Acceptance of Responsibility Statement to the U.S. Probation Office and to the government, in which he admitted his guilt, hoping that he will receive applicable sentence reductions for Acceptance of Responsibility and the Safety Valve.

12. Based upon AUSA Fernandez' agreement to file a § 5K1.1 Motion, Gaetano Lombardo has effectively negated any chance of success on appeal by the foregoing actions that he has taken relying upon such agreement.

13. On Friday, May 8, 1998, undersigned counsel telephoned AUSA Fernandez and was informed that the government would not be filing a § 5K1.1 Motion because the United States Attorney's Office has apparently decided that Gaetano Lombardo's actions in convincing Franco Lombardo to plead guilty do not, standing alone, warrant the filing of a § 5K1.1 Motion.

14. This decision is a direct breach of the oral substantial assistance agreement made in the January, 1998, telephone conversation between AUSA Fernandez and undersigned counsel.

15. Once the government promises to file a § 5K1.1 Motion as a bargaining chip in the cooperation-negotiation process if the defendant performs a specific act, the government's discretion as to whether to file such a motion to reduce a defendant's sentence is circumscribed by the terms of the agreement and by an implied requirement of dealing with a defendant in good faith. See United States v. Rexach, 896 F.2d 710 (2nd Cir. 1990); see also United States v. San Pedro, 5 FLW Fed D621 (S.D. Fla. December 27, 1991-Judge Gonzalez). In addition, the Government's refusal to file the Motion to Reduce in this case may be challenged for bad faith or misconduct. United States v. Agu, 949 F.2d 63, 67 2nd Cir. 1991).

16. In this case, the government promised Gaetano Lombardo that it would file a § 5K1.1 Motion if he convinced his cousin and co-defendant, Franco

4

Lombardo, to plead guilty, which he accomplished. When such an agreement rests in any significant degree on a promise or agreement of the prosecutor so that it can be said to be part of the inducement or consideration for the agreement, that promise must be fulfilled. United States v. Jureidini, 846 F.2d 964, 965-66 (4th Cir. 1988).

17. In the event of a government breach of an agreement like the one in this case, Defendant suggests that this Court should look to contractual law and may order specific performance of the agreement. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495 (1971); United States v. Jefferies, 908 F.2d 1520, 1523 (11th Cir. 1990); United States v. Coleman, 895 F.2d 501, 505 (8th Cir. 1990); United States v. Huerta, 878 F.2d 89, 93 (2nd Cir. 1989). See also the decisions of Judge Gonzalez in United States v. San Pedro, supra, and of Judge Highsmith in United States v. Ganz, 806 F.Supp. 1567, 1570-71 (S.D. Fla. 1992).

18. In both San Pedro and Ganz, Judges Gonzalez and Highsmith found that contract principles govern the interpretation and enforcement of cooperation agreements with the Government. In both cases, the Court conducted an Evidentiary Hearing and found that the United States Attorney's Office for the Southern District of Florida had breached the agreements involved. In both cases, the Court required specific performance on the part of the government as the appropriate remedy.

19. The Eleventh Circuit has ruled that whether the government violated an agreement with a Defendant is judged according to the Defendant's reasonable understanding at the time he entered the agreement. United States v. Boatner, 966 F.2d 1575, 1577 (11th Cir. 1992); United States v. Nelson, 837 F.2d 1519 (11th

Cir. 1988). Moreover, according to the <u>Nelson</u> decision, this Court must determine the terms of any agreement between a Defendant and the government according to objective standards if the government disputes Defendant's understanding of the agreement. 837 F.2d at 1522.

20. Based upon the <u>San Pedro</u> and other decisions set forth above, Defendant asserts that the government has materially breached its agreement with the Defendant by failing to live up to its part of the bargain. In this regard, Defendant is confident that he can establish, if the Court grants his request for an Evidentiary Hearing, through his testimony as well as the testimony of Franco Lombardo, James Eisenberg, Esquire, and undersigned counsel, that he has, in fact, rendered substantial assistance to the government. As such, Defendant maintains that AUSA Fernandez' decision, whether made solely by her, or by her and her supervisors, to not file a § 5K1.1 Motion to reduce Defendant's sentence, was made in bad faith.

21. Defendant maintains that AUSA Fernandez' refusal to file a Motion to Reduce his Sentence in this case denies him due process and equal protection of the law as guaranteed by the Fifth Amendment to the United States Constitution. Defendant can establish, at an Evidentiary Hearing, that AUSA Fernandez' decision is unreasonable, arbitrary, capricious, in bad faith, and based upon reasons that are suspect and not rationally related to any legitimate governmental objective. There has been no rational assessment by AUSA Fernandez of the cost and benefit to the United States from Defendant's cooperation, let alone the savings to the government resulting from the avoidance of Franco Lombardo's retrial. Furthermore, Defendant

will be able to establish at an Evidentiary Hearing that many Defendants in this District have provided cooperation to the Government that was substantially less than Defendant has provided, and yet those Defendants have received significant downward departures as a result of such cooperation. Defendant's undersigned counsel is confident that, after a review of the facts contained in this Motion, and certainly after an Evidentiary Hearing, this Court will reach the same conclusion based upon its own experience as well.

22.   In <u>Wade v. United States</u>, 112 S.Ct. 1840, 1844 (1992), the United States Supreme Court held, in a case that <u>did not involve an agreement</u> between the Defendant and the government, that the Court had the authority to review a prosecutor's decision not to file a Motion to Reduce a Defendant's Sentence if the "refusal was based on an unconstitutional motive" or if "the prosecutor's refusal to move was not rationally related to any legitimate Government end".

23.   Defendant asserts that entering into agreements with Defendants or other individuals to cooperate and provide evidence and testimony against other individuals serves a legitimate Government purpose; namely, the ferreting out and punishment of crime and individuals involved in crime, and the saving of the costs of trials when such agreement, as here, causes a guilty plea. Defendant further asserts that an arbitrary and bad faith decision by a prosecutor to refuse to seek a reduction in a Defendant's sentence is not rationally related to that purpose because it will deter other individuals from reaching such agreements with the Government if they are unsure that the Government will keep its end of the bargain.

24. In <u>United States v. Forney</u>, 9 F.3d 1492, 1500 (11th Cir. 1993), the Eleventh Circuit, while not ruling directly on a "bad faith" claim because it was not perfected in the pleadings, noted the requirement that the Government must fulfill its plea agreement in good faith and also held that substantial assistance-type agreements can be either oral or written, relying upon the United States Supreme Court's decision in <u>Santobello v. New York</u>, 404 U.S. 257, 92 S.Ct. 495 (1971), which involved an oral agreement.

25. There are at least two decisions, post <u>Forney</u>, that merit attention: <u>United States v. Hernandez</u>, 34 F.3d 998, 999-1001 (11th Cir. 1994), and <u>United States v. Gonsalves</u>, 121 F.3d 1416, 1419-20 (11th Cir. 1997). A review of both the <u>Hernandez</u> and the <u>Gonsalves</u> opinions compels the conclusion that both involve written plea agreements.

26. In <u>Hernandez</u>, <u>supra</u>, Hernandez, in a plea agreement, promised to assist the government by providing information concerning criminal activity and, in turn, the government agreed to "fully advise the court . . . at the time of any motion made by the defendant pursuant to Fed. R. Crim. P. 35 of the nature and extent" of Hernandez' cooperation. Parenthetically, Hernandez was sentenced for crimes committed prior to November 1, 1987, and thus could move on his own for a sentence reduction pursuant to the version of Rule 35 that was then in effect. Hernandez filed a Rule 35 Motion and requested an Evidentiary Hearing. The government did not respond to the Motion, but the District Court denied it anyway, without a hearing. The government then filed a Rule 35 Motion and a request for a

hearing, which was denied as well.

27. In Hernandez, the Eleventh Circuit concluded that it had jurisdiction to determine whether the effect of the trial court's denial of both the government's and the defendant's Rule 35 Motions, without a hearing, caused a violation of the plea agreement, citing United States v. Yesil, 991 F.2d 1527, 1531 (11th Cir. 1991). In so ruling, the Hernandez court ruled that, if the Eleventh Circuit did not have jurisdiction, Hernandez would be effectively without recourse to enforce a breached plea agreement.

28. The Eleventh Circuit, in Hernandez, remanded the case to the District Court to conduct an Evidentiary Hearing to determine whether Hernandez' substantial assistance subsequent to his sentence merited further reduction in his sentence.

29. Thus, although not directly applicable to this case, the Hernandez decision supports Gaetano Lombardo's position that this Court must conduct an Evidentiary Hearing to determine whether a violation of the substantial assistance agreement between the government and Gaetano Lombardo has occurred in this case.

30. In United States v. Gonsalves, supra, the defendant and the government entered into a plea agreement in which the parties agreed that the defendant would attempt to offer substantial assistance, and that the government would exercise "good faith" in determining whether the defendant had done so, and, if so, the government would file a § 5K1.1 Motion to Reduce the defendant's sentence. In Gonsalves, the

government did not file a § 5K1.1 Motion. As a result, Gonsalves filed a Motion for Specific Performance of his plea agreement alleging that the government acted in bad faith in failing to file such a Motion.

31.  In deciding the issue, the Eleventh Circuit, in <u>Gonsalves</u>, held that "the district court's determination that the plea agreement has not been breached is reviewable" on appeal, citing <u>United States v. Yesil</u>, 991 F.2d 1527 (11th Cir. 1992).

32.  In determining whether the government acted in good or bad faith in deciding not to file a § 5K1.1 motion to reduce the defendant's sentence, the <u>Gonsalves</u> court generally discussed the meaning of the term "substantial assistance". In this regard, the <u>Gonsalves</u> court held that:

> " 'substantial assistance' generally requires that the defendant's assistance has yielded <u>results</u> that are useful to the government, not merely that the defendant expended substantial effort or good faith in <u>attempting</u> to assist." (emphasis in original)

33.  As applied to the facts of this case, it is clear that Gaetano Lombardo's substantial assistance rendered to the government has yielded results: namely, convincing his co-defendant and cousin, Franco Lombardo, to plead guilty, and thereby avoiding an expensive retrial.

34.  Based upon the recent <u>Gonsalves</u> decision, it appears that Gaetano Lombardo has proffered facts sufficient to merit an Evidentiary Hearing. Further, it appears that, if Gaetano Lombardo can establish that he did convince Franco Lombardo to plead guilty, he further has established his entitlement to the filing of a § 5K1.1 Motion, because his assistance has yielded "results" useful to the

government.  Finally, given this scenario, Defendant asserts again that the government's failure to honor its oral substantial assistance agreement with him is unreasonable, arbitrary, capricious, in bad faith, and based upon reasons that are suspect and not rationally related to any legitimate government objective.

35.   As a result of all of the foregoing, Defendant respectfully requests that this Court conduct an Evidentiary Hearing in order to determine whether the government has breached its agreement with the Defendant.

## LOCAL RULE 88.9 CERTIFICATE

Pursuant to Local Rule 88.9, in a recent telephone conversation with AUSA Diana Fernandez, Esquire, on May 8, 1997, Ms. Fernandez indicated to undersigned counsel that the government will oppose this Motion.

WHEREFORE, for the foregoing reasons, Defendant, GAETANO LOMBARDO, respectfully requests that this Court grant him an Evidentiary Hearing and, thereafter, grant him the relief requested in this Motion, which is specific performance by the Government of its oral promise to file a § 5K1.1 or other Motion seeking a reduction of Defendant's sentence, including a reduction below the otherwise applicable ten (10) year mandatory minimum sentence.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished to Diana Fernandez, Esquire, Assistant United States Attorney, 299 East Broward Blvd, Fort Lauderdale, Florida 33301 on this 15th day of May, 1998.

Respectfully Submitted,

JOHN F. O'DONNELL, ESQUIRE
2648 Northeast 26th Place
Fort Lauderdale, FL 33306
Phone: (954) 563-9993
Fax: (954) 563-9995

JOHN F. O'DONNELL, ESQ.
Florida Bar No. 264891